# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | | |
|---|---|---|
| **THE HUNTINGTON NATIONAL BANK, SUCCESSOR BY MERGER WITH SKY BANK, et al.,** | ) ) ) ) | **CASE NO.  4:07CV99**                **4:07CV100** |
| Plaintiff and Counter-Defendant, | ) ) | JUDGE PETER C. ECONOMUS |
| v. | ) ) | |
| **ROBERT VANSICKLE, et al.,** | ) ) | **MEMORANDUM OPINION AND ORDER** |
| Defendant and Counter-Plaintiff. | ) ) | |

This matter is before the Court upon the Motions for Summary Judgment filed by Defendant and Counter-Plaintiff United States of America. (07CV99, Dkt. # 20; 07CV100, Dkt. # 27).[1] The instant motions seek judgment against Plaintiff and Counter-Defendant Huntington National Bank ("Plaintiff") to determine the relative priority between the United States and Plaintiff as to the proceeds of the anticipated foreclosure of two identified properties of Defendant Robert Vansickle.

## I. FACTUAL BACKGROUND

Plaintiff and the United States are in agreement as to the material facts. On or about March 24, 1987, Defendants Robert VanSickle and Mary VanSickle ("the

---

[1] Plaintiff originally filed two separate state court actions, which were subsequently removed to this Court. References herein to Case No. 07CV99 refer to the action originally filed in the Court of Common Pleas for Mahoning County, Ohio, which concerns the property located at 259 Park Avenue, Youngstown, Ohio. References to Case No. 07CV100 refer to the action originally filed in the Court of Common Pleas for Carroll County, Ohio, which concerns the property located at 347 Steubenville Road, Carrollton, Ohio.

VanSickles") issued a promissory note in the amount of $225,000.00 to Plaintiff.[2] To secure the note, the VanSickles executed and delivered to Plaintiff a mortgage deed ("the mortgage"), by which the VanSickles conveyed to Plaintiff a security interest and lien upon the properties at 3475 Steubenville Road, Center, OH ("Carroll County property") and 259 Park Avenue, Youngstown, OH ("Mahoning County property"), both of which were owned by the VanSickles. (07CV99, Dkt. # 20, Ex. 1; 07CV100, Dkt. # 27, Ex. 1). The mortgage was recorded with the Carroll County Recorder on March 25, 1987, and with the Mahoning County Recorder on March 24, 1987.

Subsequent to the recording of the mortgage, Plaintiff made several loans to Robert VanSickle or companies in which Robert VanSickle held an ownership interest. In exchange for the loans, Robert VanSickle provided promissory notes and commercial guarantees to Plaintiff. The loan transactions were as follows:

1. March 1, 1991. Loan of $100,000.00 to Robert VanSickle.

2. September 5, 1995. Loan of $100,000.00 to Rehabilitation Network, Inc. Guaranteed by Robert VanSickle for $100,000.00.

3. September 5, 1995. Loan of $200,000.00 to Medi-Stat Pharmaceuticals, Inc. Guaranteed by Robert VanSickle for $200,000.00.

4. September 5, 1995. Loan of $50,000.00 to Chrystal Catering, Inc. Guaranteed by Robert VanSickle for $50,000.00.

5. September 5, 1995. Loan of $75,000.00 to Atwood Nursing Center, Inc. Guaranteed by Robert VanSickle for $75,000.00.

6. September 5, 1995. Loan of $100,000.00 to Conva-Med Pharmaceutical, Inc. Guaranteed by Robert VanSickle for $50,000.00.

---

[2] The mortgage deed was actually delivered to The Second National Bank of Warren. Plaintiff is a successor by merger with Sky Bank, which is a successor by merger with The Second National Bank of Warren. See (07CV99, Dkt. # 1, Dkt. # 23; 07CV100, Dkt. # 1, Dkt. #30).

    7. May 6, 1998. Loan of $744,049.08 to Medco Pharmaceutical, Inc.
       Guaranteed by Robert VanSickle for $744,049.08.

(07CV99, Dkt. # 20, Ex. 2-5; 07CV100, Dkt. # 27, Ex. 4-6; Dkt. # 23 at 3).

Plaintiff did not record any of the subsequent promissory notes or commercial guarantees with either the Mahoning County Recorder or the Carroll County Recorder. Only the March 24, 1987, mortgage was recorded.

The United States filed a Notice of Federal Tax Lien against the Mahoning County property with the Mahoning County Recorder on May 22, 2001, (07CV99, Dkt. # 20, Ex. 6), and against the Carroll County property with the Carroll County Recorder on April 25, 2001, (07CV100, Dkt. # 27, Ex. 5), for Robert VanSickle's federal tax liability for tax years 1996 and 1997. The United States also filed Notices of Federal Tax Lien with the Mahoning County Recorder on October 10, 2001, October 29, 2002, July 13, 2004, and May 19, 2005, (07CV99, Dkt. # 20, Ex. 6), and with the Carroll County Recorder on October 15, 2001, and October 28, 2002, (07CV100, Dkt. # 27, Ex. 5), for Robert VanSickle's Trust Fund Recovery Penalties.

Plaintiff initially brought the instant actions in the Court of Common Pleas for Mahoning County, Ohio, on December 5, 2006, ("the Mahoning County case") and in the Court of Common Pleas for Carroll County on December 21, 2006, ("the Carroll County case") to reduce to judgment promissory notes and commercial guarantees delivered to Plaintiff by Robert VanSickle, and to foreclose on those notes and the March 27, 1987, mortgage. (07CV99, Dkt. # 1, Mahoning Compl.; 07CV100, Dkt. # 1, Carroll Compl.).

The United States was named as a defendant because of its federal tax liens on the properties to be foreclosed, and the case was removed to this Court on January 12, 2007. (07CV99, Dkt. # 1; 07CV100, Dkt. # 1).  After removal, the United States filed an answer and counterclaim to reduce to judgment the federal tax liens and Trust Fund Recovery Penalty tax liabilities, and to foreclose its tax liens upon the Mahoning County property, the Carroll County property, and a third property owned by the VanSickles at 4146 Sugarbush, Canfield, OH ("the Sugarbush property").  Robert VanSickle did not respond to Plaintiff's complaint, nor to the United States' counterclaim.  Default was entered against Robert VanSickle in both cases upon application by the United States on September 6, 2007, (07CV99, Dkt. # 15; 07CV100, Dkt. # 22), and upon application by Plaintiff on September 10, 2007.  (07CV99, Dkt. # 17; 07CV100, Dkt. # 24).  The United States and Plaintiff have each moved for default judgment against Robert VanSickle in both cases.  (07CV99, Dkt. # 18, Dkt. # 11; 07CV100, Dkt. # 18, Dkt. # 25).

The United States filed the instant Motions for Summary Judgment on November 5, 2007.  (07CV99, Dkt. # 20; 07CV100, Dkt. # 27).  In each case, Plaintiff has filed a Memorandum in Opposition and the United States has filed a Reply Memorandum in Support.  (07CV99, Dkt. # 23, Dkt. # 24; 07CV100, Dkt. #30, Dkt. # 31).

## II. LAW AND ANALYSIS

### A. Standard of Review

Summary judgment is appropriate only where there lacks a genuine issue of material fact and the movant is entitled to judgment as a matter of law. FED. R. CIV. P.56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 321.  The moving party must

demonstrate to the Court through reference to pleadings and discovery responses the absence of a genuine issue of material fact. Id. The burden on the non-moving party is to show, through the use of evidentiary materials, the existence of a material fact which must be tried. Celotex Corp., 477 U.S. at 324. The inquiry for the Court is whether "there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250. In short, "[t]he respondent cannot rely on the hope that the trier of fact will disbelieve the movant's denial of a disputed fact, but must 'present affirmative evidence in order to defeat a properly supported motion for summary judgment.'" Street v. J.C. Bradford & Co., 886 F.2d 1472, 1479 (6th Cir. 1989) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. at 250).

### B. Ohio Rev. Code § 5301.232

Plaintiff contends that, pursuant to Ohio Rev. Code § 5301.232(A), the subsequent advances made by Plaintiff to Robert VanSickle were secured by the March 24, 1987, mortgage up to the amount of $225,000.00, plus interest. According to Plaintiff, it was not necessary to record each advance to give it priority over the subsequent federal tax liens because the mortgage and the subsequent advances were all executed prior to the tax liens, and the recording of the mortgage secured all of the debts. By contrast, the United States contends that because the mortgage does not meet the requirements for an open-end mortgage under § 5301.232, it did not secure the subsequent unrecorded advances. Thus, in order to have priority over the federal tax liens, each advance must have been individually recorded with the appropriate county recorder prior to the time that the

5

United States filed its notices of the tax liens. Plaintiff does not dispute that the subsequent advances were not individually recorded.

Ohio Rev. Code § 5301.232 states, in relevant part:

> (A) Whether or not it secures any other debt or obligation, a mortgage may secure unpaid balances of loan advances made after the mortgage is delivered to the recorder for record, to the extent that the total unpaid loan indebtedness, exclusive of interest thereon, does not exceed the maximum amount of loan indebtedness which the mortgage states may be outstanding at any time. With respect to such unpaid balances, division (B) of this section is applicable if the mortgage states, in substance or effect, that the parties thereto intend that the mortgage shall secure the same, the maximum amount of unpaid loan indebtedness, exclusive of interest thereon, which may be outstanding at any time, and contains at the beginning thereof the words "OPEN-END MORTGAGE."
>
> (B) A mortgage complying with division (A) of this section and securing unpaid balances of loan advances referred to in such division is a lien on the premises described therein from the time such mortgage is delivered to the recorder for record for the full amount of the total unpaid loan indebtedness, including the unpaid balances of such advances that are made under such mortgage, plus interest thereon, regardless of the time when such advances are made.

OHIO REV. CODE § 5301.232 (2007).

**C. The March, 24, 1987, Mortgage**

The mortgage executed and delivered to Plaintiff by the VanSickles on March 24, 1987, states, in pertinent part:

> This mortgage is security for (a) a certain note executed and delivered by the Mortgagor to the Mortgagee concurrently herewith in the principal sum of Two Hundred Twenty Five Thousand and 00/100 dollars ($225,000.00), (b) all other notes, if any, whether otherwise secured or unsecured, now or hereafter existing for which the Mortgagor may be liable to Mortgagee, whether for previous or future loans or advances or otherwise, and (c) all other present and future debts and liabilities of every sort and kind and

6

> whether otherwise secured or unsecured from the Mortgagor to the Mortgagee, whether joint or several, direct or contingent, express or implied, represented by note, open account, overdraft, claim or otherwise. All such obligations referred to herein shall be conclusively deemed to have been made, acquired or continued in force in reliance upon this mortgage and any other security available to the Mortgagee, regardless of whether presently existing or hereafter created, incurred or acquired.

(07CV99, Dkt. # 20, Ex. 1; 07CV100, Dkt. # 27, Ex. 1).  The mortgage does not contain the words "OPEN-END MORTGAGE."  Therefore, the parties agree that § 5301.232(B) is not applicable.  (07CV99, Dkt. # 23 at 6; 07CV100 Dkt. # 30 at 6).  However, Plaintiff need not rely on § 5301.232(B), which allows for relation back of subsequent debts to the date of the original mortgage when determining the priority of such advances in relation to intervening liens.  Rather, because all of the subsequent advances were made prior to the filing of any of the notices of federal tax liens, the subsequent advances will have priority over the federal tax liens if they were, in fact, secured by the mortgage.

### D. Priority of the Liens

As a general rule, the priority of a federal tax lien in relation to other liens is governed by the common law rule that "the first in time is the first in right."  <u>In re Terwilliger's Catering Plus, Inc.</u>, 911 F.2d 1168, 1176 (6th Cir. 1990).  A federal tax lien arises "at the time the assessment is made."  26 U.S.C. § 6322 (2007).  To have priority over a federal tax lien, a competing lien "must be perfected in the sense that there is nothing more to be done to have a choate lien," prior to the date of the federal lien.  <u>KeyBank National Assoc. v. Norton</u>, 2004 U.S. Dist. LEXIS 29330, *6 (N.D. Ohio 2004) (internal quotations omitted).

7

Under Ohio Rev. Code § 5301.231, "[a]ll amendments or supplements of mortgages, or modifications or extensions of mortgages or of the debt secured by mortgages…shall be recorded in the office of the county recorder of the county in which the mortgaged premises are situated *and shall take effect at the time they are delivered to the recorder for record.*" OHIO REV. CODE § 5301.231 (2007) (emphasis added). Thus, except in the case of an open-end mortgage, any modification or extension of an existing mortgage, including the securing of additional debts, is not perfected until such change is presented to the appropriate county recorder for recording. It follows that, because a modification in the form of a subsequent advance is not perfected until the advance is presented for recording, it cannot become a lien under the mortgage until that time.

Plaintiff argues that "[t]he Additional Obligations became secured by the Mortgage as of the date of the advance." (07CV99, Dkt. # 23 at 7; 07CV100, Dkt. # 30 at 7). As support for this argument, Plaintiff points out that the mortgage specifically states that it will secure future debts, which is permissible under § 5301.232(A). Plaintiff then cites Second National Bank of Warren v. Boyle, 155 Ohio St. 482 (Ohio 1951), for the proposition "that a mortgage to secure future advances, which the mortgagee is not obligated to make, is valid, and that the liens under the mortgage for such advances are entitled to priority over a judgment lien which attaches after such advances are made."

Plaintiff's argument misses a key point. While a mortgage may secure subsequent advances such that the advances receive priority over competing subsequent liens, the advances are not actually secured by the mortgage until they are delivered to the county recorder for recording, as required by § 5301.231. Upon delivery for recording, the

8

advances become effective as of the date they were made and receive priority over liens that attach after that date. See OHIO REV. CODE § 5301.231; Boyle, 155 Ohio St. at 485. The subsequent advances in the instant matter, however, were never delivered for recording, and were, therefore, never actually secured by the mortgage. Thus, the advances were never perfected as liens and cannot be given priority over the federal tax liens.

No genuine issue of material fact exists as to the priority of the federal tax liens over the subsequent advances made by Plaintiff to Robert VanSickle. The advances were never recorded and, as a result, were never perfected as liens against either the Mahoning County property or the Carroll County property. Therefore, as to the proceeds of the anticipated foreclosure of the properties, the United States, through the federal tax liens upon both properties, has priority over Plaintiff's claims regarding the subsequent advances.

## III. CONCLUSION

For the foregoing reasons, Defendant's Motions for Summary Judgment are hereby **GRANTED**. (07CV99, Dkt. # 20; 07CV100, Dkt. # 27).

**IT IS SO ORDERED.**

> **/s/ Peter C. Economus – February 29, 2008**
> **PETER C. ECONOMUS**
> **UNITED STATES DISTRICT JUDGE**